**DISTRICT 50, UNITED MINE WORK-ERS OF AMERICA and Local Union 13071, District 50, United Mine Workers of America, Plaintiffs,**

v.

**The PITTSTON COMPANY, a Corporation, doing business as Erwin Supply Company, Defendants.**

Civ. A. No. 695–F.

United States District Court
N. D. West Virginia,
at Fairmont.

Nov. 24, 1962.

Louis Meisel, Fairmont, W. Va., for plaintiffs.

Howard Caplan, Clarksburg, W. Va., for defendants.

HARRY E. WATKINS, Chief Judge.

This court must decide whether, under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, it should require specific performance by this employer of the provisions of the award of an arbitrator in this collective bargaining agreement. Defendant admits that it entered into the contract in question; that the matter was heard and submitted to a duly appointed arbitrator for decision, and that the arbitrator ordered reinstatement of the discharged employee with back pay to date of reinstatement. Defendant claims that the purported grievance did not involve any issue relating to personal prejudice or anti-union activity and was, therefore, not within the scope of the collective bargaining agreement; and that it had the right to discharge the employee, Robilliard, "for good cause, bad cause, or no cause at all."

Articles I and II of the collective bargaining agreement recognize the right of employees to organize and of the Union to be their sole bargaining agent. Article III provides, in part, as follows:

"The rights to hire and discharge are vested exclusively in the Company, and the Union and Local shall not abridge these rights.

"It is not the intention of this provision to encourage the discharge of any employee or the refusal of employment to applicants because of personal prejudice or for lawful activities in matters, affecting the Union or the Local. It is understood that the Company will not give or refuse employment to a person because of his affiliation or non-affiliation with the Union or Local."

Article IX relates to "SETTLEMENT OF DISPUTES, GRIEVANCES, DISCIPLINE," and reads, in part, as follows:

"(2) DISCHARGE CASES: Should any employee who is a member of the bargaining unit be discharged and it be proven that he has been wrongfully discharged, he shall be reinstated and paid for the time lost at this regular rate of pay, but all such cases shall be taken up and disposed of as soon as possible and in any event within five (5) days."

"(5) Settlement of Local and District Disputes: Should differences arise between the Union and the Company *as to the meaning and application of the provisions of this agreement,* or should differences arise about *matters not specifically mentioned in this agreement,* or should any *local trouble of any kind arise at the plant,* an earnest effort shall be made to settle such differences immediately:" (Emphasis supplied.)

The agreement then proceeds to set up grievance procedure. First, the parties or their representatives are to try to settle the dispute. If unsuccessful a Board, consisting of four members, two of whom shall be designated by the Union and two by the Company, is to decide the matter. Here such Board was appointed but failed to agree. Paragraph (5), subparagraph 5 of the agreement provides:

"5. Should the Board fail to agree the matter shall, within thirty (30) days after decision by the Board, be referred to an Umpire to be mutually agreed upon by the Company and by the duly designated representatives of District 50 and the Umpire so agreed upon shall expeditiously and without delay decide said case. The decision of the Umpire shall be final. Expenses and salary incident to the services of an Umpire shall be paid equally by the Company and by District 50."

Pursuant to this provision of the contract, the parties mutually agreed to submit the grievance and dispute to A. J. Bartlett, as Umpire, and the same was submitted to the Umpire for decision on the transcript of the evidence taken be-

fore the Board. However, the Company at all times insisted that the dispute was one which did not relate to a Union matter, and was, therefore, not within the scope of the agreement. Briefs were filed by both parties and the Umpire rendered his decision. In his decision, as amended, the Umpire made specific findings of fact. He set forth in his opinion the grievance as follows:

"I, Charles F. Robilliard, was unjustly discharged on August 22, 1961, time 4:00 by Gene Estep. No specific reason was given to me by the management. Therefore, I am asking to be reinstated to my job, Rate of pay and seniority restored and paid for time lost. Charles F. Robilliard"

There was considerable delay in exhausting the grievance procedure of the contract and getting the case submitted to the Umpire. Upon this subject the Umpire stated:

"The Umpire is not in position to say who is at fault in the delay in the processing of this case to the Umpire but indications seem to appear there has been lack of cooperation on the part of both parties."

In his written decision, as amended, the Umpire summarized the facts as follows:

"Charles F. Robilliard, the aggrieved party, has been employed by the Erwin Supply Company, at Shinnston, West Virginia, for a period of over two years. He was employed as warehouseman on the evening shift, which starts at 4:00 o'clock p. m. The Company's business is the selling of mine supplies and hardware. Mr. Robilliard's duties consist of receiving orders from customers, chiefly by telephone, making up orders for distribution by company trucks, handling incoming and outgoing supplies, and general warehouse duties. Mr. Robilliard is 26 years of age, married and has one child.

"It is stated that Mr. Robilliard was having an affair or flirtation with the wife of one of the company's office employees. On the evening of August 21, 1961, he received a telephone call from the wife of the office employee; it appears that the husband listened in on the conversation and became enraged, which resulted in a family quarrel.

"The Company contends that Mr. Robilliard's actions in this affair or flirtation with the wife of a fellow employee were detrimental to its business and reflected on its standing with its customers, and in the community.

"Mr. Robilliard was called in by the Management on the evening of August 22, 1961, and discharged for his actions in this affair or flirtation with a fellow employee's wife."

After reciting many of the details of the alleged flirtation, the Umpire concludes:

"After thorough study of all the facts contained in the testimony in the instant case, it is the opinion of the Umpire that the alleged affair or flirtation between Charles F. Robilliard and the office employee's wife appears from the testimony to be a harmless affair, based upon prevalent rumors and gossip; no obscene or immoral conduct was engaged in by the parties to this affair or flirtation. Mr. Robilliard should be censured and reprimanded for whatever actions he had in carrying on this affair, but sufficient good cause has not been shown in this case to warrant the severe penalty of discharge by the management of the Erwin Supply Company. In my opinion he was wrongfully discharged and I so find.

"Being of such opinion the Umpire makes the following

DECISION

"Charles F. Robilliard was wrongfully discharged by Erwin Supply Company.

"Charles F. Robilliard shall be returned to his work without prejudice. He shall be compensated at his regular rate of pay for all working time lost from August 22, 1961, the date of discharge to the date of reinstatement.

"The compensation allowed in this decision shall be subject to deductions of any

monies earned and unemployment compensation payments received by Charles F. Robilliard since the date of his discharge.

"A. J. BARTLETT
"Umpire"

■ The question presented to this Court is whether this dispute is "arbitrable" under the collective bargaining agreement. It is not the function of this Court to review the findings of fact of the Umpire, or even to review the interpretation of the contract by the Umpire. All disputes concerning the "meaning and application" of the contract, as well as "differences * * * about matters not specifically mentioned in this agreement," and "local trouble of any kind" arising at the plant, are required to be settled through the grievance machinery.

■ To decide whether this dispute is arbitrable, this Court must decide whether this grievance falls within the terms of Article III, the general clause giving the employer the exclusive right to hire and fire, such as to exclude this grievance from the broad arbitration clause of the collective bargaining agreement. The Court answers this question in the negative.

A very similar situation was before the Fourth Circuit Court of Appeals in the recent case of International Association of Machinists v. International Aircraft Services, Inc. (1962), 4 Cir., 302 F.2d 808. There the relief sought was to require the employer to submit the grievances to arbitration, instead of enforcing the award, but the same questions were presented. Chief Judge Sobeloff stated:

"The question presented in the District Court and on this appeal is whether these grievances fall within the terms of a clause in a strike-settlement agreement made by the parties, excluding certain matters from the broad arbitration clause of the collective bargaining agreement. The appeal is from the summary judgment entered by the District Court for the company in respect to five of the grievances.

\* \* \* \* \* \*

"Machinery for processing grievances and provisions for arbitration are found in Article V of the collective bargaining agreement. All disputes concerning the 'interpretation or application' of the contract, as well as 'any other grievance or dispute,' are required to be settled through the four-step grievance machinery, followed by arbitration if accord is not reached."

Chief Judge Sobeloff then proceeded to review the law on this subject, pages 811–812, in the following language:

"In Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Supreme Court held that federal courts should entertain suits brought under section 301 to compel performance by a reluctant party of its agreement to submit disputes to arbitration. Three subsequent Supreme Court decisions defined the courts' narrow function in interpreting and applying agreements to arbitrate.[6] Briefly sum-

"6. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); see Hays, The Supreme Court and Labor Law, 60 Colum.L.Rev. 901, 919–33 (1960); Meltzer, The Supreme Court, Arbitrability and Collective Bargaining, 28 U.Chi.L.Rev. 464 (1961).

marized, the judicial role is limited to determining whether the recalcitrant party breached its promise to submit the grievances in question to arbitration. The merits of the controversy are to be left to the arbitrator, if the question is arbitrable, or to the traditional unregulated

forces of labor and management, if not arbitrable. The precise issue before us is whether the grievances, which admittedly are encompassed within the arbitration clause of the collective bargaining agreement, also fall within the exclusion clause of paragraph 4 of the strike-settlement agreement.

"United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), confronted the Supreme Court with a similar problem of deciding whether a grievance fell within the scope of an exclusion clause. In that case, the company laid off some of its employees because it had arranged for an outside firm to perform certain heavy maintenance work. The union complained that such contracting out violated the no-lockout provision of the collective bargaining agreement, while the employer insisted that the action it had taken was within its prerogative as a management function. The agreement contained the standard arbitration clause, covering disputes 'as to the meaning and application' of the agreement, but excluded 'matters which are strictly a function of management.' The majority of the Court first found that the exclusion clause was ambiguous. This being the case, the Court thought that to decide definitively whether the exclusion clause encompassed contracting out would go a long way toward resolving the merits of the dispute. For, if contracting out were to be considered a management function, and therefore within the exclusion clause, it could hardly be said to violate the no-lockout provision of the contract. And conversely, if contracting out is not 'strictly a function of management,' then it would become reasonable to hold that the no-lockout provision had been transgressed. The Court reasoned that, to the extent that its interpretation and application of the exclusion clause were to foreshadow a decision on the merits

of the dispute, the adjudicative role of the arbitrator, for which the parties bargained, would be diminished.[7]

"7. As Mr. Justice Douglas said:
"'"Strictly a function of management" might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception.' 363 U.S. at 584, 80 S.Ct. at 1353.

Considering this result one to be avoided, the majority sent the case to the arbitrator for decision.

"The effect of this holding is to confine judicial construction of arbitration exclusion clauses to instances where the matter in dispute is either clearly within the express terms of the exclusion clause or at least within the manifest purpose of that clause.[8] As Mr. Justice Douglas for

"8. For a case where the grievance was clearly not within the terms of the arbitration clause, see Local 201, International Union of Electrical, Radio and Machine Workers v. General Electric Co., 283 F.2d 147 (1st Cir. 1960). See also cases where it was held that the breach of a no-strike clause was not an arbitrable issue: Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers, 287 F.2d 155 (2d Cir. 1961); Vulcan-Cincinnati, Inc. v. United Steelworkers of America, 289 F.2d 103 (6th Cir. 1961).

the majority said, 'In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.' 363 U.S. at 584–585, 80 S.Ct. at 1354."

Again on page 815 of 302 F.2d, the Court stated:

"This difference in treatment is explainable by recalling that our only function is to apply the arbitration

786

exclusion clause in deciding whether an issue is arbitrable, and not to interpret an ambiguous exclusion clause or to rule on the merits of the grievance itself."

The majority opinion remanded the case to the Umpire for further findings.

In United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, the Court stated:

"The collective bargaining agreement could have provided that if any of the employees were wrongfully discharged, the remedy would be reinstatement and back pay up to the date they were returned to work. Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in United States Steelworkers of America v. American Manufacturing Co., ante, p. 564 [80 S.Ct. 1343], decided this day. As we there emphasized the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

Here the Court finds that the dispute was "arbitrable," and was properly referred to the Umpire for decision under the broad general provisions of Article IX, agreed upon by the parties for settlement of disputes.

██ Plaintiffs also urged that defendant had waived its right to have a court determine whether the dispute was "arbitrable" by submitting the case to the Umpire for decision. There is no merit in this contention. Whether defendant agreed to submit the case upon a condition that it could be heard later ·in court, or without such condition, the law gives the defendant the right to have the court determine if the dispute is arbitrable under the agreement, and that decision has now been made here and the award of the Umpire must be enforced. Other points raised by defendant are without merit and are not now discussed. Plaintiffs' motion for summary judgment is granted.

An order may be entered requiring the defendant to comply with the decision of the Umpire, as amended, to do the following: (1) To return Charles F. Robilliard to his regular work without prejudice forthwith, and (2) To compensate Charles F. Robilliard at his regular rate of pay for all working time lost from August 22, 1961, the date of discharge, to the date of his reinstatement, subject to any deductions of any monies earned and unemployment compensation payments received by Charles F. Robilliard since the date of his discharge.