**GREATER KANSAS CITY LABORERS DISTRICT COUNCIL OF the INTERNATIONAL HOD CARRIERS BUILDING AND COMMON LABORERS UNION OF AMERICA OF GREATER KANSAS CITY AND VICINITY, Plaintiff,**

v.

**BUILDERS' ASSOCIATION OF KANSAS CITY, Defendant.**

No. 14156-1.

United States District Court
W. D. Missouri, W. D.

April 17, 1963.

Memorandum and Final Order
May 20, 1963.

1

**2**

John J. Manning and Robert S. Fousek, Kansas City, Mo., for plaintiff.

Harry L. Browne, Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This case now pends on plaintiff's motion for summary judgment. Defendant has also requested leave to file a motion to add additional parties defendant. For a better understanding of our ultimate ruling on these two matters, we outline first the steps that have been taken since our Memorandum and Order of January 18, 1963, (now reported as Greater Kansas City Laborers District Council, etc. v. Builders' Association of Kansas City, W.D.Mo.1963, 213 F.Supp. 429).

On February 2, 1963, defendant filed a motion for modification of our initial order, in which it suggested the defendant's motion to dismiss be simply sustained or denied. In its brief filed in support of that motion, defendant contended generally that further facts should be before the Court before summary judgment was proper. Plaintiff, on the other hand, in its written brief, maintained that no genuine issues of material fact existed which would make relief under Rule 56 inappropriate. At an informal conference held in connection with the motion, counsel for both parties candidly stated, as we subsequently reflected in our Memorandum and Order of February 7, 1963, "that they believed it most probable that all facts that either desired to have before the Court were not in substantial dispute and that they would be willing to enter into a stipulation of facts that would enable each to present fully their respective legal contentions".

Defendant's motion to modify was overruled but in view of the developments just outlined, we, on our own motion, modified the specific conditions of our initial order and in a further Memorandum and Order dated February 7, 1963, provided that:

"1. Paragraphs 1, 2 and 3 on page 16 and 17 of that order [those paragraphs appear on page 437 of 213 F.Supp.] shall be superseded by paragraphs 2 to 6, inclusive, of this Memorandum and Order.

"2. The parties shall, consistent with the discussion at the informal conference, prepare and file within ten (10) days of this Memorandum and Order, the stipulation of facts above mentioned.

"3. Should the parties be unable to agree on either the form or the substance of the stipulation, they

shall immediately advise the Court and a further informal conference will be scheduled to deal with that unanticipated problem.

"4. Plaintiff shall have five (5) days after the filing of the stipulation of facts within which to file its motion for summary judgment and brief in support.

"5. Defendant shall thereafter have fifteen (15) days within which to file its suggestions in opposition.

"6. Neither party shall file any other papers without first obtaining leave of Court."

Pursuant to that order, the parties, on March 4, 1963, filed a complete stipulation of facts to which is attached sixteen separate exhibits. Plaintiff thereafter filed its motion for summary judgment and supporting brief. Defendant has replied. Defendant simultaneously filed its request for leave to file a motion to add additional parties defendant.

## I.  MOTION FOR SUMMARY JUDGMENT

*Alleged factual dispute regarding intent.* Defendant's first contention is that "there are issues of fact before the Court, disclosed by the stipulation, which preclude a summary ruling". Defendant asserts that "it is difficult to imagine a case in which summary judgment would be less appropriate". Defendant, however, concedes that if we find that "(1) the language of the Master Agreement is so clear and unambiguous as to preclude testimony relating to the intent of the parties or [that] (2) the intent of the parties is so clearly established by the stipulation that a hearing could not be productive", then summary judgment would be proper. Defendant, of course, denies that either finding should be made.

In our original opinion we noted that "[t]he language used by the parties in Article IX is as broad as could be chosen"; that "[w]e can not think of any language that could have been used in the agreement before us that would express any broader intention to arbitrate

any differences that might arise between the parties during the life of the agreement"; and that "there are no doubts [as to the parties' intention] to resolve in this case" (l. c. 434 of 213 F.Supp.). We further held that:

"If doubts were present, created either by reason of the language of the agreement or by other possible factual circumstances that would tend to support the idea that there could have been an intention to exclude the particular difference from the coverage of the arbitration clause, we would have a different case.

"In dealing with such a different case we would be required to determine whether there is any 'forceful evidence of a purpose to exclude the claim from arbitration' for we cannot, under the mandate of Warrior, adversely resolve the doubts in favor of coverage 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'. We therefore do not reach in this case the question of what procedure is to be followed in a case in which we would be required to resolve possible doubts that might have been created by the language of the agreement."

We attempted to make clear that in a particular case "other factual circumstances" in addition to "the language of the agreement" conceivably could create doubt and conceivably could "tend to support the idea that there could have been an intention to exclude the particular difference from the coverage of the arbitration clause". But we held that this case was not such a case. The stipulation does not reveal any additional data that suggests that such determination should be changed.

In order, however, to give defendant the fullest sort of opportunity to support its assertion that this case is not ripe for adjudication on motion for summary judgment, we followed the procedure

above outlined. The stipulated facts reinforce our original determination.

It is an undisputed fact within the meaning of Rule 56 of the Rules of Civil Procedure that:

"At the time of execution of Attachments (B) [a Memorandum Agreement dated June 16, 1960] and (C) [the formal Joint Agreement upon which this action is based] there was no specific discussion of whether the provisions of Article IX of Attachment (C) would be applicable to Article VI therein".

Included as a NOTE to that paragraph of the stipulation, the respective parties state:

"Defendant contends that evidence should be admissible to prove the intent of the parties and if such evidence is admissible, Defendant would adduce evidence for the purpose of showing that it was the parties intent that Article IX was not to apply to Article VI. Such evidence would consist of testimony that from the conversations of the negotiators it would be inferred that Article IX did not apply to Article VI and that had the Defendant's Representatives specifically discussed the question they would have taken the position that Article IX did not apply to Article VI.

"Plaintiff contends that such evidence is inadmissible because of the parol evidence rule and further that if such evidence were admitted it would be inferred from such evidence that it was the intent of the parties that Article IX would apply to Article VI."

The factual situation is perfectly clear. The parties signed a collective bargaining agreement which contained as Article IX as broad an arbitration clause as could be written. They now agree by formal stipulation that there was no specific discussion of whether that clause would be applicable to Article VI of the bargaining agreement. But the defendant contends that the requisite "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute", and the requisite "forceful evidence of a purpose to exclude the claim from arbitration", as stated in Warrior, United Steelworkers of America v. Warrior & Gulf Nav. Co. (loc. cit. 582 of 363 U.S., loc. cit. 1353 of 80 S.Ct.), can be said to be supplied, or, at least a genuine dispute as to an issue of fact can be created, by proffered evidence that "had the Defendant's Representatives specifically discussed the question they would have taken the position that Article IX did not apply to Article VI" (as defendant's position is stated in the Stipulation).

Apart from the fact that we think the language of the agreement is completely clear and unambiguous, we find that the proffered evidence is not sufficient to make a genuine issue of fact within either the rules of the Supreme Court decisions cited as applicable to this case or within the meaning of Rule 56. If a party could forestall the application of summary judgment on the basis of this sort of "disputed" fact, relief under Rule 56 may always be avoided.

*Plaintiff's Alleged Lack of Standing.* Defendant's second contention is more difficult to state than to answer. Defendant asserts that "plaintiff is before this Court not to compel defendant to perform some act for the benefit of employee union members—but rather seeks to set aside an existing welfare plan and force arbitration to establish a plan of its own choosing". Defendant adds that "this objective points up the inequity of allowing plaintiff to maintain this suit because, in fact, it is not representing employees but is representing itself".

Defendant has made no effort, in the strict sense, to put in issue plaintiff's capacity to sue. Nor does it present any supporting particulars as required and contemplated by Rule 9(a) of the Rules of Civil Procedure. Rather, defendant suggests that "the District Council does not have individual employee members"; that it "is only a confederation" of local unions; that "the local unions are the

'labor organizations' in this case \* \* \* within the meaning of Section 301(a)"; that "the union members whose welfare is involved here look to their local union for representation—not to some far removed District Council"; that "if the Builders' Association has bargained with the wrong group, it has violated Section 8(a) (5) of the National Labor Relations Act, as amended"; and that "this issue must be determined in order to resolve this law suit and the issue is within the exclusive jurisdiction of the National Labor Relations Board".

We cannot close our eyes to the fact that it is stipulated that "The Greater Kansas City Laborers District Council [the plaintiff in this case] and certain of its affiliated locals have been in contractual relations with the Builders' Association of Kansas City [the defendant in this case] for more than fifteen years". Nor can we ignore the fact that the parties have stipulated that:

"Plaintiff, Greater Kansas City Laborers District Council, is a labor organization, as defined in Section 2(5) of the Labor Management Relations Act, composed of delegates from affiliated locals and organized July 21, 1947, under the Constitution of the International Hod Carriers, Building and Common Laborers Union of America, as adopted by its Fourteenth Convention, October 16–20, 1961, a copy of which is attached hereto as Attachment (A)." [1]

Attachment (A) includes the Uniform District Council Constitution as adopted in 1961. That constitution provides, in quite the usual and standard fashion, that the District Council is an affiliate of the International Union; that all Local Unions are required to affiliate with and remain affiliated with the District Council; that the District Council is vested with express power "to negotiate, bargain for and enter into understandings and agreements with employers, for and in behalf of its affiliated Local Unions and to enforce and police the observances thereof by employers and employees, Local Unions and their members \* \* \*." (Section 2(a), page 4 of Uniform District Council Constitution.)

It hardly lies in defendant's mouth to say after fifteen years of contractual experience with plaintiff that it now believes there is some question about whether it executed the present contract with the right party; or that the self-suggested possible violation of Section 8(a) (5) of the National Labor Relations Act, 29 U.S.C. § 158 is within the exclusive jurisdiction of the National Labor Relations Board; and that this Court is therefore without power to enforce defendant's duly executed agreement with plaintiff until the Labor Board has acted.

The stipulated facts show that the collective bargaining agreement was executed by the parties to this action as of June 17, 1960, and that the parties then obligated themselves to agree upon the terms of health and welfare trust agreement with payments to commence April 1, 1962. But it was not until January, 1962, that discussions of that matter were actually commenced. Those negotiations were obviously ineffective. It is stipulated that the April 1, 1962 date went by but that on April 24, 1962, defendant executed a Health and Welfare Agreement with Local Unions 264 and 555.[2] Those local unions, by stipulation

---

1. A NOTE to this paragraph of the stipulation stated that "Defendant does not concede that Plaintiff is a labor organization within the meaning of Section 301". Defendant makes no real point concerning that reservation in its brief. Guild Industries Manufacturing Corp. (1961) 131 N.L.R.B. 127, 48 L.L.R.M. 1019; Building and Construction Trades Council of Boston (1958) 119 N.L.R.B. 1816, 41 L.R.R.M. 1388, and Metallic Building

Co. (1952) 98 N.L.R.B. 386, 29 L.R.R.M. 1346, illustrate that any possible point that defendant might have attempted to make would be without merit.

2. That Agreement and Declaration of Trust of April 24, 1962 attached to the stipulation recites on its face that it is only between defendant and Local 264. It is stipulated, however, that Local 555

of the parties, are admittedly affiliated with the plaintiff.

Within the week following the execution of the April 24, 1962 agreement, plaintiff protested to defendant that defendant's collective bargaining "agreement is not with individual Local Unions"; that the collective bargaining agreement was between defendant and the plaintiff; and that "any separate, secret or individual agreements with a Local Union [relating to a health and welfare fund] * * * will not be recognized as valid by the Council, unless first approved" by it. Specifically plaintiff stated that the particular agreement of April 24, 1962 was not approved by it and that it was therefore invalid. Plaintiff expresses a willingness to meet with defendant "concerning our Health and Welfare Insurance program as it is high time something is agreed to concerning this problem".

On May 6, 1962, defendant expressed disagreement with plaintiff's conclusions stating that "the position of the Builders' Association is * * * in accord with our labor agreement [with the plaintiff] which says we will establish a welfare program 'in accordance with a trust agreement to be agreed upon between the parties' ".[3] The stipulated facts show that matters continued to progress from bad to worse. Finally, on July 20, 1962, plaintiff requested arbitration. On July 26, 1962 defendant somewhat vaguely agreed to meet with plaintiff. Plaintiff again requested arbitration on August 16, 1962. On November 5, 1962, plaintiff wired defendant as follows:

"WE HAVE NOT RECEIVED A REPLY TO OUR LETTERS OF JULY 20 AND AUGUST 16, 1962. IF YOU DO NOT ADVISE US ON OR BEFORE NOVEMBER 7, 1962, OF YOUR POSITION WE WILL ASSUME THAT THE BUILDERS' ASSOCIATION DOES NOT INTEND TO ARBITRATE THE SUBJECT MATTER OF SUCH LETTERS".

Defendant wrote plaintiff on November 16, 1962, that plaintiff's telegram made it clear that "the Council is following a course of obvious procedural gymnastics in our present, apparent disagreement". The distance that then existed between the parties is illustrated by the following paragraphs from defendant's letter of November 16, 1962:

"For almost a year the Council refused to negotiate with us on this problem, stating on several occasions that welfare was strictly a union matter and that the Council intended to 'dictate' the terms and conditions thereof. For the most part you declined discussion of the subject matter and when contacts came you constantly reiterated the Council's intention to act unilaterally. We believe this constant and continuous refusal to bargain to be, in and of itself, a breach of our agreement.

"Finally, I received from you a letter dated July 20th mentioning the word 'arbitration' which letter led to a later meeting between yourself and the writer hereof. At that time I suggested you write me a letter discussing in detail the Council's thoughts on arbitration and specifying the issues, the areas and the parties involved. You agreed that you would write that letter to me that same afternoon. I heard nothing more from you until August 17th at which time I received a com-

is to be considered a party presumably because, although not identified in the instrument as a party, Local 555 did sign the document together with Local 264.

3. The joint agreement attached to the stipulation shows that "the parties" to that agreement were "the Builders' Association of Kansas City, hereinafter referred to as the 'Association', and the Greater Kansas City Laborers District Council of America of Greater Kansas City and vicinity, hereinafter referred to as the 'Union' ". Article IV of the Joint Agreement provides that "The Union is hereby recognized as sole and exclusive bargaining agent for all employees coming within the terms of this Agreement".

munication from you which was unresponsive, improper in procedure and generally vague in content. My efforts at interpretation were settled a short thirty minutes later when I was notified by way of court summons that the Council preferred litigation. These several steps taken simultaneously by the Council demonstrates clearly the real intent and purposes of the Council." [4]

Obviously the parties have never taken affirmative constructive steps toward arbitration. In this Court, defendant concedes that "the Builders' Association is required by law to negotiate in good faith with the representatives of their employees" but attempts to justify its refusal to carry out its agreement to agree on the terms of a trust agreement, as required by Article VI of its contract with plaintiff, or to arbitrate its differences with plaintiff as it agreed to do in Article IX of its contract with plaintiff, because "the issue of whether the Builders' Association has bargained with the wrong group [in violation of Section 8(a) (5) of the National Labor Relations Act, as amended] is an issue that must be determined in order to resolve this law suit". Defendant contends therefore that this case cannot go forward because such an issue is "within the exclusive jurisdiction of the National Labor Relations Board".

. The implication of defendant's argument, of course, is that this Court must stay all proceedings until somehow still other litigation be commenced and decided in still a third forum before the Court may exercise its power to deal with the question of whether the parties are to be required to carry out their 1960 agreement to arbitrate all differences without the aid of any legal tribunal.

Quaker State Oil Refining Corp. v. N. L. R. B., 3rd Cir., 270 F.2d 40, and John L. Clemmey Company, 118 N.L.

R.B. 599 (1957) are the only authorities cited in defendant's entire brief. Those cases are cited to support the argument just stated. Both those cases actually are in the main stream of rapidly developing federal labor law and, by analogy, support plaintiff's position rather than defendant's.

In Quaker State Oil Refining Co., the Court of Appeals enforced an order of the National Labor Relations Board that found that the employer had violated the National Labor Relations Act in that it had refused to bargain collectively with the exclusive bargaining representative of the union. Clemmey is to the same effect. The factual circumstances in both cases are not unlike the stipulated facts in this case. And both cases relied upon the leading case of Medo Photo Supply v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944).

Medo Photo Supply held that "[t]he National Labor Relations Act makes it the duty of the employer to bargain collectively with the chosen representatives of his employees". It further held that this "obligation being exclusive * * * it exacts 'the negative duty to treat with no other' ". It also held that for an employer to attempt to negotiate with any one other than the recognized bargaining representative is a "violation of the essential principle of collective bargaining". And that case established that "[t]he statute was enacted in the public interest for the protection of the employees' right to collective bargaining and it may not be ignored by the employer, even though the employees consent". Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944) decided the same day Medo Photo Supply, held that an employer is even required to continue to bargain collectively with a union

4. The reference to "litigation" does not refer to this case. It refers to the State court litigation commenced on August 17, 1962. The parties have stipulated that the State Court dismissed plaintiff's

action on September 27, 1962, and that plaintiff filed a Notice of Appeal to the Supreme Court of Missouri on November 18, 1962. That case still pends in the latter court.

which had lost its majority after the employer had wrongfully refused to bargain.

Defendant's loose talk about the local unions being principals, and the plaintiff, as a district council, being but an agent of those local unions, and similar talk to the effect that "it is a basic rule of law that principals have a right to contract on their own behalf" is obviously without merit. Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954), held that when the National Labor Relations Act was enacted the Congress "discarded common-law doctrines of agency". And, more important for the purposes of this case, that case further held that "[t]o allow employers to rely on employees' rights in refusing to bargain with the formally designated union is not conducive to that end [of industrial peace]; it is inimical to it". "If an employer has doubts about his duty to continue bargaining", that case definitively determined, "it is his responsibility to petition the Board for relief, while continuing to bargain in good faith at least until the Board has given some indication that his claim has merit".

It is stipulated in this case that for more than fifteen years defendant has been bargaining collectively and entering into contractual relations with the plaintiff. In the contract involved in this case, defendant specifically recognized plaintiff as the sole and exclusive bargaining agent for all employees covered by the agreement. The parties "agreed to agree" on the Trust Agreement under which payments for a health and welfare insurance program would be paid by the employers represented by defendant. And the parties agreed to arbitrate any differences that might occur between them. And finally, they agreed that the decision of the arbiter would be final and binding on both parties.

The underlying rationale of cases such as Medo Photo Supply and the cases that follow that case support and require a holding that when the proper parties to a collective bargaining agreement agree to

agree on another provision of that same agreement, those parties must, in good faith, do exactly that. Should the attempt of the parties to agree fail, as it did in this case, then the parties are to be relegated, in accordance with another portion of their agreement, to arbitration in accordance with the principles of federal labor law as discussed in our initial Memorandum and Order. We therefore rule that defendant's second argument is untenable.

■ *Alleged Proposed Violation of Section 302.* Defendant's final argument in opposition to summary judgment suggests that "the District Council's demand is [a] potential violation of Section 302 of the Labor Management Relations Act". Defendant's argument emphasizes that "plaintiff's *demand,* which it seeks to present to arbitration, is itself an illegal one". The factual meat of the problem again is covered by the stipulation of the parties.

It is stipulated that there is presently in operation "a Health and Welfare Fund established by trust agreement between the Missouri Chapter of Associated General Contractors [an employers group different from defendant] and the Eastern Missouri Laborers District Council [a labor group different from plaintiff] and the Greater Kansas City District Council and some of their affiliated locals". It is also stipulated that the employer-trustees charged with the administration of that different Welfare Fund are not members of the defendant's association. Defendant contends that plaintiff "has continued to insist that all contributions [the ten cents (10¢) per hour for all employee classifications that the parties agreed in the Joint Agreement would begin April 1, 1962] by members of defendant be made to the Construction Industry Laborers Welfare Fund, Jefferson City, Missouri". The additional contentions of the parties are set forth in the stipulation as follows:

"Defendant contends that the employer-trustees do not represent the Builders' Association of Kansas City in any way and the demand by the

District Council that members of Defendant contribute to the Construction Industry Laborers Welfare Fund is not legal under Section 302 of the National Labor Management Relations Act.

"Plaintiff contends that since employers are represented by trustees as provided in such Section 302, their request that members of the Defendant pay into the Construction Industry Laborers Welfare Fund is legal under Section 302."

We must determine whether this Court, or the arbitrator, must first deal with those differences. Defendant argues that this Court must make a preliminary and primary judicial determination. It is asserted that plaintiff's action to enforce the arbitration agreement is "an action in equity" and that "plaintiff cannot expect to obtain what it asks until it shows the Court that its demands are neither illegal nor inequitable". Defendant's argument concludes with the assertion that "in order to entitle itself to equitable relief in this action, plaintiff is bound to show the propriety of its demand, which it has not and cannot do".

We think that what we said in our original Memorandum and Order, and what we said and held in Local Union No. 46, etc. v. Bevington & Basile, Wholesalers, Inc., W.D.Mo.1962, 213 F.Supp. 437, indicates our rejection of defendant's argument.

We do not rule, nor do we need rule, that plaintiff's assumed demand that members of defendant's association pay into the Jefferson City Welfare Fund would or would not violate Section 302 of the National Labor Management Relations Act. We merely hold that the differences of opinion that exist between the parties in regard to that question are differences within the meaning of Article VI of their collective bargaining agreement and that such differences must be arbitrated in accordance with Article IX of that agreement.

We cannot and will not assume that a fair application of the required arbitration procedure will result in a violation of law. We must assume the contrary. If there is a real legal question here, a matter we do not reach, it will arise in orderly fashion after an arbitration award is made the subject of an action to either vacate or enforce the award. United Steelworkers of America v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) involved just such an action. And that case declared that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards".

Certainly federal labor policy would be even more fundamentally undermined if a federal court would, by an initial determination, pass on the validity of an award that may never be made. Enterprise Corp. relied upon United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), decided the same day. The latter case teaches that "the courts * * have no business * * * considering whether there is equity in a particular claim * * *. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious".

Two recent decisions in the Court of Appeals for the Second Circuit contain helpful suggestions applicable to this case. Judge Medina in Livingston v. John Wiley & Sons, 2 Cir., 1963, 313 F.2d 52, held that the process of formation of new segments of federal labor law requires an application of "the principle of restraint" to cases relating to arbitration. We agree. We also agree with Judge Kaufman's general application of that principle in Carey v. General Electric, 2 Cir., 1963, 315 F.2d 499. It was there held, in language quite applicable to this case, that:

"Even were we to agree with the employer's contention that certain of the grievances might result in an unauthorized 'decision' * * * we do not deem that proper cause for interceding at this point. Arbitration may well contribute to indus-

trial peace even if it results in the arbitrator's determination that he can make no valid award * * *. We cannot divine now, nor do we deem it proper to predict, the precise form in which the aribitrator will frame his decree. We merely hold that in each of the grievances under discussion, he has the jurisdiction to reach a decision on the merits. Should his decision or the remedy exceed the bounds of his authority as established by the collective bargaining agreement, that abuse of authority is remediable in an action to vacate the award. See United Steelworkers [of America] v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). That question 'is for another day.'"

That case, as did Livingston, supra, dealt with many of the questions we originally determined in this case and in its companion case, Local Union No. 46, etc. v. Bevington & Basile, Wholesalers, Inc., supra. Both cases took note of the general inclination of a recalcitrant party to raise all sorts of questions of procedural and jurisdictional nicety, which, if allowed by a court, would defeat the "essence of arbitration that it be speedy and that the source of friction between the parties be promptly eliminated". If a court must in every case make a preliminary judicial determination against every defense that the ingenuity of counsel for a recalcitrant party can conceive before an agreed arbitration procedure can go forward, then, in the language of Judge Kaufman, "the arbitral wheels would very soon grind to a halt". Such a result can not be tolerated because it would be in direct conflict with the federal labor policy established by the Congress as interpreted by the Supreme Court.

Specifically, Carey noted that "[t]he fear of possible conflict with the NLRB can easily be exaggerated". And in rejecting an argument basically not dissimilar to defendant's NLRB argument in this case, Carey held:

"The strong emphasis, placed upon arbitration as a means of peacefully and expeditiously resolving labor disputes, in the drafting of section 301 and in its interpretation by the Supreme Court, see e. g., Textile Workers Union [of America] v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers [of America, AFL-CIO] v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), might be immeasurably frustrated were it within the power of a recalcitrant party to assert that his conduct which is alleged to be in breach of contract would be also an unfair labor practice and within the sole domain of the NLRB; almost any breach of a collective bargaining agreement could successfully be garbed as an unfair labor practice."

For the reasons stated, we hold defendant's third argument to be without merit.

## II. DEFENDANT'S REQUEST FOR LEAVE TO FILE MOTION TO ADD ADDITIONAL PARTIES DEFENDANTS

In support of its request for leave to file and its motion to add Local 264 and Local 555 as parties defendant, defendant repeats in slightly different form, certain of the arguments we have already answered. Defendant again argues that before this Court can order arbitration it must first determine that the August 24, 1962 agreement with the local unions is "without legal status, and should be disregarded" and that any order of this Court ordering arbitration must necessarily have the effect of "setting aside" those agreements. Under our expressed view of this case, the two local unions are neither necessary nor indispensible parties; nor would their joinder do anything except add parties to a case that would not have been in this Court in the first place had defend-

ant complied with the terms of its collective bargaining agreement with plaintiff.

We cannot ignore the command of the Supreme Court in United Steelworkers of America, AFL-CIO v. Warrior & Gulf, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), that our action must "be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration" and that the scope of our "judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance". We have determined, without the presence of the local unions, that the reluctant party did contract to arbitrate. Adding the two local unions as parties to this case could not affect the quite narrow question that is our province to decide, namely, whether the parties to a collective bargaining agreement did in fact agree to arbitrate and whether the arbitral process should therefore be commenced. The real questions raised by defendant, and any that could be raised by the suggested additional defendants, must necessarily, in light of the stipulated facts, be questions that relate to the merits of the differences between the parties to the collective bargaining agreement and therefore are for the arbitrator, not for this Court. Leave to file the motion, and the motion to add additional parties therefore should be and they are hereby denied.

## III. DIRECTION OF FURTHER PROCEEDINGS

■ The exercise of the principle of restraint requires that we make no finding in regard to the legal status of the agreement of April 24, 1962. A good faith compliance with Article IX might possibly (although we frankly doubt it) produce an agreement between the parties that would make the question moot. Our final decree will provide for a fresh start in the application of all procedural steps established in Article IX so that the initial steps in the agreed arbitration procedure will be solely between the parties and their representatives. A neutral third party to act as an arbiter is required under Article IX only when the preliminary negotiations between the parties to the Joint Agreement result in failure.

Should plaintiff elect to approve the agreement of April 24, 1962 between defendant and the local unions, or should it be agreed by all concerned that the agreement of April 24, 1962 be somehow modified to everyone's satisfaction, then one situation would be presented. On the other hand, if plaintiff continues to press its contention of invalidity, then a far different situation would be presented. We do not, of course, recommend that either party take any particular position. We can no more divine nor predict what the parties may do in regard to the positions they might take than we can divine or predict what an arbitrator might decide on the merits, if it becomes necessary for such a decision to be made.

What we do say is that we say nothing about the validity of the agreement of April 24, 1962. That is not our present judicial business; it is first the business of the parties; if they cannot settle the question to their own satisfaction, then it is the business of the arbitrator. We cannot conceive how it can ever become our business except in an action to either vacate or enforce the award of the arbitrator.

One final word should be added concerning the State court litigation. In our original Memorandum and Order we indicated that we thought our final decree should be designed so that the parties would not only be out of this Court but that they would also be out of the State court. We still think that the nature of the problem presented by this case requires that action.

The very nature of the collective bargaining process generally and of the conduct of an arbitration proceeding in particular makes success unlikely if the parties go back and forth between the negotiating table and a court room. Any court proceeding is necessarily an ad-

versary proceeding; each side expects to and does deal at arms length. An arbitration proceeding, if it is to be successful in its early stages, must be a cooperative effort by the parties to reach a fair agreement. Slight experience with both processes is sufficient to convince the most skeptical that litigation in even an appellate court creates an atmosphere of strife and tension that is not conducive to the requisite spirit of cooperation so necessary for successful arbitration, particularly in its preliminary stages and before the necessity for calling in an impartial third party arises.

And it is not wholly unreasonable to suggest, if experience in other labor cases is any guide, that as long as the parties keep any branch of litigation alive in any court, it is quite unlikely that they will be able to approach the conference table without either remembering or planning their next battle in the court room. Our final decree will therefore again include a provision that will attempt to dispose of the State court litigation. The best thought, and hopefully, cooperation of counsel is requested in this connection.

The situation that counsel and the Court now face is not basically different, except for the lapse of time, than that which faced us when we made our original order directing further proceedings. Because of that passage of time, counsel are even more familiar with their problems and therefore do not need as much time to take the steps required by our initial order.[5] Accordingly, we therefore return to much of the substance of our original order and now order that:

1. The parties shall be allowed ten (10) days in which to explore the possibility of whether they may, consistent with what we have determined in this Memorandum and Order, and in our

Memorandum and Order dated January 18, 1963, suggest an agreed form of Order for approval of this Court, that will provide:

(a) That plaintiff's motion for summary judgment be sustained;

(b) For the dismissal of all pending litigation in this or any other court;

(c) A time schedule for collective bargaining in regard to the terms that shall be included in the Trust Agreement, together with an express provision that should an agreement not be reached by a day certain, that the matter shall then be immediately referred to an Arbitration Board selected in accordance with Article IX of the agreement between the parties. The names of the persons who will serve on the Arbitration Board shall be named in the proposed order; and

(d) The last date upon which the parties will appoint an arbitrator in the event the preliminary steps in the arbitration procedure prove to be unsuccessful.

2. Should the parties be unable to agree on a proposed order, then plaintiff shall, within fifteen (15) days of the date of this Memorandum and Order, file a suggested form of Order that it believes should be entered. Such a proposed Order shall include provision for all four of the items mentioned in paragraph 1.

3. Should counsel desire any clarification of the requirements of this Order, we will be happy to schedule an informal conference at a convenient time.

4. Neither party shall file any other papers without leave of Court.

It is so ordered.

5. We do not intimate that the additional time spent since our initial order has not been profitably spent. The Court expresses its appreciation for the most excellent cooperation of counsel for both parties in their successful elimination of any possible disputed question of material fact by the stipulation they so willingly prepared and for the excellent briefs submitted in support of their respective contentions.

## MEMORANDUM AND FINAL ORDER OF MAY 20, 1963

The parties have been unable to agree upon a form of final order. Accordingly, plaintiff has submitted a suggested form of order. Plaintiff's suggested form would require that plaintiff immediately dismiss all other pending litigation.

We have already stated our conviction that simultaneous litigation and arbitration are not compatible. We are further convinced, however, that it would be inequitable to bar only one of the parties from litigation if the other exercises its right to continue to litigate. We have therefore modified plaintiff's suggestion in this regard to require that plaintiff dismiss the pending State court litigation only in the event that no appeal is taken from the final order of this Court. Accordingly,

IT IS HEREBY ORDERED AND DECREED that:

1. Plaintiff's Motion For Summary Judgment is sustained.

2. Defendant's Motion to Dismiss is denied.

3. Defendant's Request for Leave, and Motion to Add additional parties defendant is denied.

4. In the event, but only in the event, that no appeal is taken in this case, plaintiff Greater Kansas City Laborers District Council of the International Hod Carriers Building and Common Laborers Union of America of Greater Kansas City and Vicinity, its officers, agents and attorneys, and defendant Builders' Association of Kansas City, its officers, agents and attorneys, are hereby ordered to dismiss all other pending litigation arising out of the dispute in question in this or any other Court. Such action shall be taken within ten (10) days from the day the time for appeal from this final order will have expired. If an appeal is taken by either party, the enforcement of this and all other portions of this final order shall be stayed until this case is remanded to this Court.

5. The plaintiff and defendant shall meet within five (5) days of the date of this Order and attempt to agree upon the terms of a trust agreement.

6. If, upon five (5) days after the date of this Order an agreement has not been reached upon the terms of said trust agreement, then plaintiff and defendant, their officers and agents, shall each appoint three (3) men to an Arbitration Board within three (3) days thereafter. If within three days after such appointment, the plaintiff's and defendant's arbitrators have been unable to select a seventh person to act as an impartial arbitrator under Article IX of the agreement, then either party may apply to this Court for an appropriate Order designed to implement the selection of said impartial arbitrator.

It is so ordered.