[Civ. No. 15082. Second Dist., Div. Three. Mar. 29, 1946.]

F. G. BIERLEIN, Appellant, v. ALBERT H. JOHNSON, Respondent.

George C. Lyon for Appellant.

George Appell for Respondent.

WOOD, J.—Plaintiff appeals from an order confirming an award of arbitrators, and asserts that they exceeded their powers in making the award.

Plaintiff was the inventor of machines used in the manufacture of pliofilm products, had contracts for the manufacture of the products, had certain claims for damages for breach of contract, was the owner of machines used in manufacturing curlers, and was the owner of one-half interest in the Endura Corporation. Defendant owned the other one-half interest in that corporation, and had lent money to plaintiff. On April 1, 1940, they entered into a written agreement which recited that each party owned the above-mentioned interests, and stated that plaintiff assigned his said invention and interests to a company thereafter to be incorporated under the name of Endura, Inc., that defendant would make loans to Endura, Inc., to finance the manufacture and sale of pliofilm products and curlers, and that he had advanced $2,622.50 for Endura, Inc. It was further agreed therein that said loan and any future loans, if not paid within one year, should then bear 6 per cent interest; that plaintiff should draw $30 per week against his future profits; that defendant should not draw against his profits until the loans were paid; that until the formation of the new corporation, plaintiff should have full charge of manufacturing, office management and bookkeeping, and that defendant should have full charge of sales. It was further agreed that all profits should be divided equally between them until such time as said new corporation was formed, and at that time the stock thereof "shall be divided equally, taking into consideration any amounts drawn by either party prior thereto." It was also provided therein that: "In case of dispute between the parties hereto, each shall appoint one arbitrator and the two arbitrators so appointed shall appoint a third arbitrator, and said three arbitrators shall decide the matter in dispute. . . . This contract shall continue indefinitely, but in the event it shall prove inadequate or unjust, or unfair on one of the parties hereto, such matter may be referred to arbitrators, chosen as above, and said arbitrators shall work out an equitable adjustment which shall be binding on both parties hereto."

On April 22, 1941, plaintiff filed his petition for arbitration and alleged therein that about March 28, 1941, defendant excluded plaintiff from and kept him out of the premises occupied by the business, refused to allow plaintiff to have possession of any of plaintiff's property at said place of business; that a corporation by the name of Endura Company, Inc., was incorporated at the request of defendant, without the knowledge or consent of plaintiff, and defendant claimed said corporation was the one to be incorporated under said agreement; that a controversy had arisen between them as to whether the assignment made by plaintiff in the agreement was effective until after stock in the new corporation had been issued to him in payment for his property, and as to what division should be made of stock in the new corporation; and that the controversy should be settled by arbitration.

Defendant answered said petition, alleging in part that the Endura Company, Inc., was formed under the terms of said agreement, that plaintiff had transferred all the property acquired under said agreement to said corporation, and that the new corporation was formed with the acquiescence of plaintiff.

Upon the hearing of the petition on November 6, 1941, the court made a minute order that, "The Court gives judgment for plaintiff that the controversy be submitted to arbitration upon issues to be agreed upon by both counsel."

On December 4, 1941, a formal judgment for arbitration was filed which provided that: "The plaintiff and defendant shall submit to arbitration the following disputes arising from said contract:

"(a) What machinery . . . or other things of value, did F. G. Bierlein put into the business . . . ?

"(b) What sums of money . . . has F. G. Bierlein withdrawn from said business which are properly chargeable to his account?

"(c) Did F. G. Bierlein drive his own auto in business of said Company?

"(d) If . . . [he] did drive his own auto . . . is he entitled to make a charge therefor, and if so, what is the proper charge . . . ?

"(e) What sums of money . . . or other things of value did Albert H. Johnson put into the business . . . ?

"(f) What sums of money, or other things of value, has

Albert H. Johnson withdrawn from said business which are properly chargeable to his account?

"(g) Did Albert H. Johnson do the work required of him under the contract of April 1, 1940?

"(h) If . . . [he] did not do the work required of him . . . are the salary or wages of any of the employees who did the selling of the products properly chargeable to the separate account of Albert H. Johnson rather than cost of doing business generally?

"(i) Was the provision in said contract . . . for the formation of a corporation abandoned . . . by the mutual consent of . . . [them] prior to the formation of Endura Company, Inc.?

"(j) Was Endura Company, Inc., organized in accordance with the agreement . . . which provides for the incorporation of Endura, Inc.?

"(k) Has there been a delivery of the assets of said business, as operated under said contract of April 1, 1940, to the . . . Endura Company, Inc.?

"(l) If Endura Company, Inc., is organized in accordance with the agreement . . . and there has been a delivery of assets thereto, what is the proper stock interest of plaintiff and defendant in such corporation?

"(m) If Endura Company, Inc., is not organized in accordance with the agreement . . . what are the proportionate interests of plaintiff and defendant in said business?"

Thereafter arbitration was delayed for various reasons more than two years. On March 20, 1944, the arbitrator appointed by the court having died, and defendant having failed to appoint an arbitrator, the plaintiff made application for the appointment of arbitrators by the court so that the arbitration could proceed. Pursuant to stipulation of the parties, the court thereafter ordered arbitration to proceed before arbitrators selected by the American Arbitration Association.

On April 21, 1944, plaintiff and defendant also signed a "Submission" in which they agreed to submit to arbitration "Controversies ordered to be arbitrated in the judgment of the Superior Court . . . dated December 4, 1941." Attached to said written submission, and made a part thereof, were the same thirteen specific issues which, upon agreement of counsel, had been incorporated in said judgment of the court. They further stated therein that they would "abide by and

perform any Award rendered pursuant to this Agreement, and that a judgment of the Court, State or Federal, having jurisdiction may be entered upon the Award.''

On February 13, 1945, the arbitrators made findings as to each of the thirteen issues or questions submitted to them. They found that plaintiff put machinery and material of a value of $1,000 in the business; that he was chargeable with $1,562.30 withdrawn from the business; that he drove his automobile in the business and was entitled to charge $540 for the use thereof. They found that defendant put $1,666.93 net cash into the business; that he did the work required of him under the contract; that the provision in the contract for the formation of a corporation was not abandoned by mutual consent prior to the formation of Endura Company, Inc.; that Endura Company, Inc., was not organized in accordance with the agreement; that there had been a delivery of the assets of the business, as operated under the contract, to Endura Company, Inc. In answer to question (m), above quoted, as to ''what are the proportionate interests of plaintiff and defendant in said business'' if the Endura Company, Inc., was not organized in accordance with the contract, the arbitrators found as follows: ''Plaintiff has no interest in the business of Endura Company, Inc.''

Also on February 13, 1945, in addition to their findings as to the thirteen questions, the arbitrators made a written statement as follows: ''The undersigned arbitrators award to the plaintiff F. G. Bierlein . . . ($2,249.94) against the defendant Albert H. Johnson in full settlement of the claims of each party against the other submitted to arbitration. Attached hereto and incorporated herewith as a part of this award, are the findings of the arbitrators in respect to the specific questions submitted to the arbitrators for determination.''

Appellant contends that the last above-mentioned statement by the arbitrators was not within the issues submitted to them, that by reason of such award of money in full settlement of the claims of each party the arbitrators exceeded their authority, and therefore the award should not have been confirmed. His argument is that the thirteen specific points submitted to the arbitrators marked their authority and power and they could not go beyond them; that the award shows that they considered the thirteen questions to be nothing more than

the basis for findings of fact, and that, then based upon those findings, they made a cash award; that they determined that defendant had transferred the assets of the business to a corporation not contemplated by the agreement of the parties, and in which plaintiff had no interest; that the damage caused to plaintiff by this stratagem of defendant was not submitted to arbitration; that even if the arbitrators were justified in treating the thirteen specific questions as the basis for a cash award in full settlement of the controversy, their conclusion based upon such findings must have support in the findings, and such support is not present for the reason the figure $2,249.94, shown in their conclusion, cannot be obtained from the findings.

Section 1288 of the Code of Civil Procedure provides that the superior court in which arbitration is had, "must make an order vacating the award, upon the application of any party to the arbitration. . . . Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made. . . ." The plaintiff made a motion to vacate the award upon the ground that the arbitrators exceeded their authority, but the motion was denied. The arbitrators' jurisdiction or authority to act is derived from, and limited by, the arbitration agreement or submission. (6 C.J.S. 219.)

The thirteen questions submitted to the arbitrators did not include specifically the matter of determining the amount of cash to be paid by one to the other in full settlement of his interest in the business. It is not implied in those questions that such an award should be made, the effect of which would be to preclude plaintiff from retaining an interest in the company to which his property had been transferred upon the understanding that he should have a stock interest therein. The first four questions related to the value of things plaintiff had put into the business, what money he had withdrawn, and what credit should be allowed him for use of his automobile. The next four questions related to the value of things defendant had put into the business, what money he had withdrawn, and whether he was entitled to credit for the work required of him under the contract. The next three questions related to the formation of the new company and its assets. The next and last two questions related to the *stock interests*

and the *proportionate interests* of each party in the new company. The agreement of April 1, 1940, between the parties provided that the stock in the new corporation "shall be divided equally, taking into consideration any amounts withdrawn by either party." It appears that the first eight questions submitted to the arbitrators, which related to credits and charges as to each party, were for two purposes: (1) for the purpose of "taking into consideration any amounts withdrawn by either party," in dividing "equally" under their contract the stock of the new corporation, if it was formed in accordance with the contract; and (2) for the purpose of ascertaining the credits and charges as to each party as a basis for determining the interest of each party in the new company, if it was not formed in accordance with the contract. It also appears that the next three questions were for the purpose of ascertaining whether or not the new company was formed in accordance with the contract, and of ascertaining whether the assets of the old company were transferred to the new company. The last two questions were for the purpose of ascertaining the *stock interests* of the parties in the new company. Plaintiff was claiming, according to his petition for arbitration, that he was kept out of the place of business, that the new company was formed without his knowledge, that his property was transferred to it, and that there was a controversy as to the *division of stock* in the new company. The specific questions and the petition for arbitration show that plaintiff was desirous of knowing what his proportionate stock interest was in the new company. It does not appear from the questions or his petition that he was desirous of disposing of his interest in the business in consideration of a cash award. Under the contract, and under the business as conducted before the new company was organized, he had an interest in the assets of the business. Since the assets which he had furnished to the old company had been transferred to the new company, it appears that he had some interest in the new company. It is true that the arbitrators found that he had no interest in the new company. It might be, however, that they so found because they considered that the cash award was in lieu of his stock interest in the new company. It does not appear what disposition was made of his interest in the assets transferred to the new company. Under the questions submitted, if he had any interest in the new company, he had the right to have it determined as a stock in-

terest, rather than to have a cash award for the value thereof. As above indicated, it does not appear that the arbitrators made the cash award upon that basis. If the cash award was for damages resulting to plaintiff by reason of wrongful conversion of his property, the arbitrators were determining a matter which was not submitted to them. Although the parties agreed that they would abide by any award rendered pursuant to the agreement of submission, that stipulation did not signify that the award should be cash. An award is the determination of the issue presented for arbitration. The arbitrators exceeded their authority in making a cash award.

The order confirming the award is reversed.

Desmond, P. J., and Shinn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 27, 1946. Traynor, J., voted for a hearing.