[Civ. No. 12478. Fourth Dist., Div. Two. Aug. 13, 1973.]

EAST SAN BERNARDINO COUNTY WATER DISTRICT,
Plaintiff and Appellant, v.
CITY OF SAN BERNARDINO, Defendant and Respondent.

### COUNSEL

Farrell & Farrell, Sherwood Green and Denslow Green for Plaintiff and Appellant.

Ralph H. Prince, City Attorney, Sidney Maleck, Assistant City Attorney, and Robert W. Kelly, Deputy City Attorney, for Defendant and Respondent.

### OPINION

GABBERT, J.—This is an appeal from a judgment of the superior court which determined there were no arbitrable issues in an arbitration proceeding sought by the East San Bernardino County Water District ("District") concerning a Joint Powers Agreement with the City of San Bernardino ("City").

The District provides water and sewer services for approximately 35,000 people in an area lying generally outside the eastern boundary of the City. In the 1950's, the City was considering the construction of a second sewer treatment plant to serve the eastern area of the City as well as lands lying to the east thereof. At the same time, the District was planning construction

of a treatment plant and a main line sewer system. Both entities were seeking federal funds for their proposed construction, which would, in part, duplicate each other.

The City employed Currie Engineering Company ("Currie") to make a report on the project. The City furnished the District with a copy of the Currie Report which was the only formal engineering study presented to both parties. The Currie Report, among other matters, made projections serving to show sufficient income could be generated from a $1 monthly sewer service charge on single family dwellings to pay for the new trunk sewer, the new treatment plant, and to provide for a reduction in the sewer rate by 1969.

Extended negotiations were begun in 1957 between the City and the District looking toward construction of treatment facilities and trunk lines which would serve both entities. The parties eventually agreed on the method to be used to compute the compensation to be paid, and in January 1958 signed a Joint Powers Agreement. Section 7 of the agreement provided the District was to pay a lump sum equal to 92 percent of the charges which would have been collected by the City, had the persons served by the District been located in the City and liable for the payment at the rates which the City established for sewer users within the City. The same section also stated: "Any amount of said payment which is in dispute shall be paid to the City with a notation that it is paid under protest and shall be repaid at a later time if so decided by arbitration as provided in this agreement."

The agreement specified the City should, subject to the restrictions set forth in its charter,[1] construct the east trunk line and sewage disposal works at its own expense. The City was to operate, maintain and preserve these works in good repair and working order.

The Joint Powers Agreement, in section 10, contained arbitration provisions stating, in part: "All controversies arising out of the interpretation or application of this agreement or the refusal of either public agency to perform the whole or any part thereof shall be settled by arbitration . . ."

---

[1]The City, by its charter, is limited in the disposition of sewer revenues. Any charges collected must be at least sufficient to support the sewer system, and must be paid into the sewer fund. Any expenditures from this fund must be used to support the sewer system and its general costs.

From the date of the signing of the agreement and for the following 11½ years the City charged its citizens a basic $1 sewer rate. In August 1969 the City increased its charges to a basic rate of $1.50 and increased the rate to the District in a like amount. After the rate increase all payments made by the District to the City were paid under protest.

In June 1970 the District served notice of arbitration proceedings on the City. The City, in turn, appointed its arbitrator and after all arbitrators had been selected they met and requested the presentation by the parties of agreements of submission, defining the issues in dispute and establishing procedures for the arbitration.

The District contended in its submission agreement the two issues to be arbitrated were: (1) the amount to be charged by the City as reasonable compensation for services rendered by the City; and (2) the credit, if any, to which the District was entitled for the overpayments made under protest. The District argued the primary issue was whether the formula fixing the amount of the charges set forth in the agreement was subject to the implied limitation that such charges must be reasonable. The City claimed the arbitration was an attempt by the District to revise the payment formula and was beyond the scope of the agreement—that the agreement itself prohibited either party from invoking arbitration to amend it. No mutual submission agreement was reached by the parties.

The City agreed to allow the arbitrators to frame the issues. However the arbitrators ordered ". . . that the issues to be arbitrated should be determined by a court to avoid a hearing under continual objection based on the arbitrable issue."

The District then filed a petition[2] in the superior court praying the court order the arbitration to proceed and requesting it to determine the issues to be arbitrated. After the matter was heard in the court below, findings of fact and conclusions of law were signed and filed. A judgment was entered terminating the arbitration proceedings and denying the District's allegation there were arbitrable issues.

The relevant findings of fact made by the trial court may be summarized as follows: (1) the City has used the funds received from the District

---

[2]Although the pleading is entitled a "complaint" it is, in effect, a "petition."

for City sewer and sewage treatment purposes as required by the City charter and the terms of the Joint Powers Agreement; (2) the City was not restricted by the agreement to make only reasonable charges, but could set charges to be paid in accordance with the 92 percent user formula; (3) both parties agreed to the 92 percent user charge formula which has remained unchanged; (4) the District is bound by the plain, unambiguous language relating to payments set out in the agreement; (5) the District was not misled by the City to believe payments would be in some other amount (such as a reasonable amount or as a proportion of the operational costs of City sewage facilities); (6) the City has acted in good faith; (7) the action was filed by order of the arbitrators to determine and define whether there was an arbitrable issue; and (8) the agreement is clear and unambiguous on the two issues submitted by the District.

From the findings noted above (and other ancillary findings) the court reached the following (summarized) conclusions of law: (1) the amount to be paid by the District was the 92 percent charge formula; (2) the City charter requires the City to use sewer charges only for sewer purposes, and the City has done so and that no provision of the agreement required the City to restrict the use of sewer funds received from the District solely to the retirement of debt, or for the operation, repair and maintenance of the east trunk line and treatment works, or to provide funds for their enlargement; and (3) no issues remain subject to arbitration and both parties fully litigated the two issues raised.

The arbitration proceedings were ordered terminated.

### The Arguments of the District

The District argues that Civil Code section 1611 is applicable to the Joint Powers Agreement. The section reads: "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth."

The District relies on this section, claiming that the amount to be paid to the City is left entirely to the discretion of the City, and, therefore, the consideration "must be so much money as the object of the contract is reasonably worth." The District contends the determination of this amount is arbitrable since the City has the absolute power under the agreement

to charge the District any amount it desires for sewer services simply by raising the rate charged within the City. It is claimed the City could build new sewer facilities or increase other costs unrelated to services provided the District, thus requiring higher payments from the District, even though such charges bore no relationship to the services provided. The District's brief epitomizes this argument as follows: "Under this circumstance where one party to a contract has the absolute right and discretion to increase the amount of consideration paid for the services rendered, the provisions of Civil Code Section 1611 come into play which require the City, as an implied term of the contract agreement, to make a reasonable charge for the services rendered."

In addition to its foundational argument applying the specific statutory authority of Civil Code section 1611, the District relies on an implied covenant of good faith and fair dealing so as "not to keep the other party from receiving the fruits of the contract." The District states it knew it was giving the City the power to set the compensation to be paid by the District to the City for the services rendered. However, it contends it has the right to demand and expect that this power will be fairly exercised to provide a reasonable return to the City for the services rendered to the District. The District claims there is an arbitrable issue under the terms of the contract, i.e., whether in truth and in fact the charges being made by the City are fair and equitable, or whether the City has arbitrarily exercised its power to charge rates having no relation to the cost or value of the services rendered. Lastly, the District contends a second arbitrable issue is concerned with whether the City must so apply the funds received from the District toward the operation of the sewer facilities so that if there is any surplus the District would be entitled to a return of its portion of the surplus.

### The Arguments of the City

The City, for its part, contends that the provisions of Civil Code section 1611 are not applicable because the agreement provides a method for determination of the charges to be made. It points out the trial judge found the parties had negotiated and made offers and counteroffers regarding the payment provisions of the contract. Thereafter, and following extended negotiations, the 92 percent formula figure was agreed upon. The Joint Powers Agreement did not mean a reasonable charge was intended by the parties to apply and supersede the formula provision.

The City replies to the District's argument that Civil Code section 1611 became an implied provision of the agreement by noting that implied covenants are not favored in the law. The City argues there was no evidence of bad faith on the part of the City and that there was no suspicion the City had expended sewer revenues for improper purposes. The trial court found the use by the City of funds received from the District was not restricted to charges applicable to the east trunk line and the treatment plant, but rather, the revenues could be put to the uses set forth in this City charter.

The City finally argues that the District is trying to reform a contract which is unambiguous and that the arbitrators lack the power to do so since the Joint Powers Agreement provides the arbitration board "shall have no power to add to or subtract from this agreement."

## Discussion

In the case before us the parties, the arbitrators and the trial court seem to have misconceived the nature of an arbitration proceeding and the function of the court with respect to it.

The minutes of the preliminary hearing of the board of arbitrators read, in part, as follows:

"There was, therefore, no mutual submission agreement reached by the parties and no settlement of the dispute or issue to be determined by the arbitrators. The City argeed to allow the arbitrators to frame the issues. *However, it was the opinion of the arbitrators that the issues to be arbitrated should be determined by a court to avoid a hearing under continual objection based on the arbitrable issue.*" (Italics added.)

We have not found, nor have we been cited, any California authority in which arbitrators, before the process of consideration of issues has actually begun, have ordered a party to the arbitration to file a complaint in the superior court to determine whether there are issues to be arbitrated. We are of the opinion a court should not step in to determine the issues in an arbitration proceeding (at the stage involved in the instant case) except under extraordinary circumstances. We believe necessity and not convenience should be the test. In the instant case the only basis given by the arbitrators to have the issues determined by the court was one of convenience—to avoid a hearing under anticipated continual ob-

jection. A New York case involving an appeal from an order granting an examination before the hearing in an arbitration matter puts the argument in these words: "[A]n arbitration proceeding is, except in specified particulars, outside the court realm and jurisdiction—deliberately so taken out of the court by choice and commitment of the parties. Arbitration is subject to its own rules and practices at variance with court procedures. It is supposed to be a complete proceeding, without resort to court facilities, for handling and disposing of a controversy submitted to arbitration.. It would be generally incompatible with the nature and scope of an arbitration proceeding to allow a shift to the court forum . . . ." (*Application of Katz,* 3 App.Div.2d 238 [160 N.Y.S.2d 159, 161]; see also *William A. Welsted & Son* v. *Hawkins,* 18 App.Div.2d 869 [237 N.Y.S.2d 594]; *Mole* v. *Queen Insurance Company of America,* 14 App.Div.2d 1 [217 N.Y.S.2d 330].)

Code of Civil Procedure section 1280 defines an arbitrable controversy as covering *any question* arising between the parties to an agreement whether such question is one of law or of fact or both. Code of Civil Procedure section 1281 honors written agreements to submit an existing controversy to arbitration, and provides such agreements ". . . are valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract."

Under the Joint Powers Agreement, the District had the right to seek arbitration arising out of a dispute over the interpretation or application of the agreement; it was authorized to specify the issues to be arbitrated. Section 10 of the agreement provides, in part, as follows: ". . . The public agency desiring arbitration shall notify the other public agency by a written notice stating the following: (1) that it desires arbitration, (2) *the controversy to be arbitrated,* (3) that it has appointed its nominee, and (4) that it requests the other public agency to appoint its nominee . . . *The arbitration shall be restricted to matters relative to that stated in the notice requesting arbitration."* (Italics added.)

The District followed the arbitration provisions of the Joint Powers Agreement, submitted the issues it felt were in controversy, and requested the participation of the City in the arbitration process. The City responded, appointed its arbitrator and stated its willingness to have the arbitrators frame the issues. At this point it was the obligation of the arbitrators to carry out their duty—to consider the issues submitted by the District.

█ When parties have adopted arbitration as the method to be used in settling disputes, they must be content with its informalities and "may not

hedge it about with those procedural limitations which it is precisely its purpose to avoid." (*American Almond Prod. Co.* v. *Consolidated Pecan S. Co.,* 144 F.2d 448, 451 [154 A.L.R. 1205]; see also *Sapp* v. *Barenfeld,* 34 Cal.2d 515, 521 [212 P.2d 233].) For the arbitrators here to require a party to first use the courts to determine the issues to be arbitrated is a needless complication which runs counter to the intention of the parties as expressed in the Joint Powers Agreement, and, if generally followed, would result in the emasculation of the process of arbitration itself. If participants in the arbitral process begin to assert all possible legal or procedural defenses in court proceedings before the arbitration itself can go forward, "the arbitral wheels would very soon grind to a halt." (See *Carey* v. *General Electric Company,* 315 F.2d 499; *Greater Kansas City Laborers Dist. Coun.* v. *Builders Ass'n.,* 217 F.Supp. 1; Arb. J. (1963) p. 119.)[3]

California Code of Civil Procedure section 1281.2 follows the rule set out in section 2(e) of the Uniform Arbitration Act which provides that an order to arbitrate a controversy may not be refused on the ground the contentions of the party seeking arbitration lack substantive merit. In this state, disputes as to the meaning, interpretation, and application of any clause of an agreement which provides for arbitration—even those that prima facie appear to be without merit—are a proper subject for consideration and decision by the arbitrators. (See *Brink* v. *Allegro Builders, Inc.,* 58 Cal.2d 577, 579 [25 Cal.Rptr. 556, 375 P.2d 436]; *Arbitration Law: The Role of the Court on a Petition to Compel Arbitration,* 35 So.Cal.L. Rev. 52, 59, 64; 9 UCLA L.Rev. 218, 221; also Cal. Law Revision Com., Recommendation and Study, Arbitration, *supra,* pp. G37-G38.)

Professor Archibald Cox, an acknowledged expert in the field of labor law arbitration, has recommended the courts should send to arbitration any dispute within the scope of a contract, however frivolous it may seem. (*Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1515.)

---

[3]The California Law Revision Commission, in drafting the present arbitration statute, stated that the "procedure of referring certain questions of law to the court before the arbitrator makes a decision could cause serious delay and confusion, thus robbing the arbitration procedure of much of its value to the parties." (Cal. Law Revision Com., Recommendation and Study, Arbitration, at p. G-32 (1960).) The commission further commented that to make such reference to the courts would sanction tactics in arbitration practice which the law should seek to avoid. It was also pointed out that if the arbitrators exceed their jurisdiction and powers, a party is not without remedy since this can be a subject of review on a motion to vacate the award. (Cal. Law Revision Com., *supra,* at p. G-38; also see Code Civ. Proc., §§ 1286.2, 1286.4, 1286.6; *Flores* v. *Barman,* 130 Cal.App.2d 282, 287 [279 P.2d 81].)

California has declared its preference for the arbitrational rule established in the series of labor cases commonly referred to as "the arbitration trilogy"—*Steelworkers* v. *American Mfg. Co.*, 363 U.S. 564 [4 L.Ed.2d 1403, 80 S.Ct. 1343]; *Steelworkers* v. *Warrior & Gulf Co.*, 363 U.S. 574 [4 L.Ed.2d 1409, 80 S.Ct. 1347]; and *Steelworkers* v. *Enterprise Corp.*, 363 U.S. 593 [4 L.Ed.2d 1424, 80 S.Ct. 1358]. In *Posner* v. *Grunwald-Marx, Inc.*, 56 Cal.2d 169, 175-176 [14 Cal.Rptr. 297, 363 P.2d 313], our Supreme Court quotes and approves the following language from the *American Mfg. Co.* case: "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." (363 U.S. at pp. 567-568 [4 L.Ed. at p. 1407]; see also *Brink* v. *Allegro Builders, Inc., supra,* 58 Cal.2d 577, 579.)

The case at hand between the City and District can be roughly compared to a recent New York case, *Allen Knitting Mills, Inc.* v. *Dorado Dress Corp.*, 39 App.Div.2d 286 [333 N.Y.S.2d 848]. In *Allen,* the question of consequential damages was held to be a controversy within the scope of the arbitration clause. The provisions for arbitration therein were similar to those of the Joint Powers Agreement in the case before us. The New York court decided that to hold one party was barred from seeking recovery of consequential damages would be determining, in effect, the merits of the claim and this the court should not do—no matter how frivolous the claim might appear. The *Allen* case refused to speculate as to the result should the arbitrators fail to enforce a limitation of liability clause, thus impermissibly changing the terms of the contract. The court left such subject to possible later judicial review of the award, should one of the parties object to the award being beyond the power of the arbitrators. The result in *Allen* is in accord with our Code of Civil Procedure sections 1281.2 and 1293, and with *Northcutt Lumber Co.* v. *Goldeen's Peninsula, Inc.*, 30 Cal.App.3d 440 [106 Cal.Rptr. 353].

The specific language of the Joint Powers Agreement provides any amount of payment "which is in dispute shall be paid to the City with a notation that it is paid under protest and shall be repaid at a later time if so decided by arbitration as provided in this agreement." All payments made by the District after the price increase were paid under protest. The notice seeking arbitration filed by the District sought to arbitrate the increase as well as the questioned use of the increased revenue by the City

for purposes other than sewer service. As was stated in a labor dispute arbitration case (*Greater Kansas City Laborers Dist. Coun.* v. *Builders' Ass'n.*, 213 F.Supp. 429, 436): "Courts cannot force the parties to be reasonable. But courts can force the parties to use the means of settlement that they have agreed to use . . . ."

The parties here entered into a broad agreement to arbitrate. They could have excluded from the arbitration process the specific area relating to the charges to be made for the services provided by the City. The only exclusionary clause in the arbitration provisions of the Joint Powers Agreement is the sentence: "The arbitration board shall have no power to add to or subtract from this agreement." This general statement does not exclude the particular issue of charges from arbitration. We are of the opinion, in the absence of an express provision removing a particular issue from arbitration, that only a clear-cut expression to exclude a claim from arbitration can prevail, particularly where, as here, the exclusion is general and the arbitration provisions of the Joint Powers Agreement are broad. (See *District 50, United Mine Workers* v. *Pittston Company*, 210 F.Supp. 781.) "In the absence of such expressly stated exclusionary purpose, the ambiguity, if any, under the authorities must be resolved in favor of the arbitrable process." (*International U. of E. R. & M. Wkrs.* v. *Westinghouse Elec. Corp.*, 218 F.Supp. 82, 87.)

Although each party accuses the other of not wanting to arbitrate, both parties, in their briefs and at oral argument, attest their willingness to do so. Both chose a settlement at the hands of arbitrators in preference to an adjudication by a court. By the terms of their contract, independent de novo consideration by the court under the circumstances would be improper. (See *Clack* v. *State of California* ex rel. *Dept. Pub. Wks.*, 275 Cal.App.2d 743, 749 [80 Cal.Rptr. 274]; *A. Teichert & Son, Inc.* v. *State of Cal.*, 238 Cal.App.2d 736, 746 [48 Cal.Rptr. 225].)

Arbitrators are not bound to a strict adherence to legal procedures, but they are not, because of such freedom, released from the obligation to be guided by the basic agreement of the parties. (*Drake* v. *Stein*, 116 Cal. App.2d 779, 785 [254 P.2d 613]; *Frantz* v. *Inter-Insurance Exchange*, 229 Cal.App.2d 269, 273 [40 Cal.Rptr. 218].) It is for the arbitrators to determine which issues are actually necessary to the ultimate decision. (*Morris* v. *Zuckerman*, 69 Cal.2d 686, 690 [72 Cal.Rptr. 880, 446 P.2d 1000]; *Brink* v. *Allegro Builders, Inc.*, supra, 58 Cal.2d 577, 579.)

The Joint Powers Agreement specifically makes the arbitrators the final judges of all issues raised. It has been held that an arbitrator has no legal

right to decide issues not submitted to him and must decide all issues that are submitted. (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 184 [260 P.2d 156]; see also 6A Corbin on Contracts (1963 ed.) § 1444A, at p. 465.)

Code of Civil Procedure section 1281.2 provides that a court shall not order arbitration if "the right to compel arbitration has been waived by the petitioner." However, it is apparent from the record the District did not waive its right to compel arbitration; it filed its petition in the trial court at the order of the arbitrators. The District in its pleading still sought to compel arbitration. (See *Northcutt Lumber Co.* v. *Goldeen's Peninsula, Inc., supra,* 30 Cal.App.3d 440, 444-445.)

After the hearing below, the trial court came to the legal conclusion that: "No issues remain subject to arbitration." This determination was made on the basis the words in the agreement as to payment were so plain and clear their meaning was beyond dispute. Professor Corbin in his treatise on contracts disagrees with a court taking such position, stating: "The applicant for the order [to arbitrate] is in fact disputing the interpretation of the other party, however plain and clear it may appear to the court. That issue has been submitted to the arbitrator, . . . He [arbitrator] may see 'ambiguity' that the court does not see and will not even open its eyes to see." (6A Corbin on Contracts, *supra* (1963 ed.) § 1444A, at pp. 463-464.)

We follow the analysis suggested by Professor Corbin. The conclusion the trial court reached was an improper procedural limitation which emasculated the provisions for arbitration in the Joint Powers Agreement and was in excess of the scope of the court's discretion as provided by Code of Civil Procedure section 1281.2.[4]

The arbitrators, not the courts, have the task of defining the issues between the parties and of the interpretation, construction and application of the Joint Powers Agreement. Judicial caution is called for against jumping too quickly to the conclusion that a claim indisputably falls outside the scope of an arbitration provision. (72 Harv.L.Rev., *supra,* p. 1517.)

In remanding this dispute to the arbitrators, we note the thoughtful language in the concluding portion of the opinion in *Northcutt Lumber*

---

[4]Section 1281.2, Code of Civil Procedure reads in part: "If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit."

*Co.* v. *Goldeen's Peninsula, Inc., supra,* 30 Cal.App.3d 440, 445. The arbitrators should disregard any expressions of ours in this opinion, as well as the determination of the trial court, on any issues that come before them as arbitrators. Neither this opinion nor the trial court's decision should be considered as establishing any guidelines for the arbitrators as to the decision of issues. The arbitrators are to arrive at their own determinations independently and solely on the basis of the presentation of the matter to them.

The judgment is reversed and the case remanded to the trial court with instructions to abate the proceedings.

Gardner, P. J., and Kaufman, J., concurred.