[No. A043403. First Dist., Div. Two. Nov. 8, 1989.]

DEPARTMENT OF PUBLIC HEALTH OF THE CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790, Defendant and Respondent.

### COUNSEL

Louise H. Renne, City Attorney, Jonathan V. Holtzman, Assistant City Attorney, and Jerry J. Spain, Deputy City Attorney, for Plaintiff and Appellant.

Vincent A. Harrington, Jr., and Van Bourg, Weinberg, Roger & Rosenfield for Defendant and Respondent.

### OPINION

**KLINE, P. J.**—The Department of Public Health of the City and County of San Francisco (the City) appeals from an order denying its petition to vacate an arbitration award in favor of Service Employees International Union, Local 790 (the Union) and confirming the award. The City contends that the arbitrator exceeded his power set forth in the arbitration agreement in awarding the grievant 225 days' backpay. We conclude that the arbitrator acted within his power and affirm the order.

## *Factual and Procedural Background*

This appeal arises from a grievance filed on behalf of Eric Nims. A hearing was held before the arbitrator on October 26, 1987. His written opinion and award was issued on February 16, 1988. The issue presented was: "Whether the City and County worked the grievant, Eric Nims, out of his classification in violation of [Section] 40 (now 41) of the Memorandum of Understanding [between the Union and the City] and if so, what is the appropriate remedy?"

The opinion found as follows: Nims alleged that, although he was classified as a Health Worker II, he had been assigned to perform duties in the higher class of psychiatric social worker and was entitled to the pay differential between the two classifications for the period of time he worked "out-of-class." Nims did work in the higher class from March 1984 until January 1985 and was not paid in accordance with the higher classification during that period. In March 1984 he orally discussed the out-of-class assignment with management and requested a review of his compensation. In May 1984, he made that request in writing, and on July 27, 1984, he sent a memorandum to his supervisor stating that if he was not going to be compensated at the higher level, he should be assigned the duties of the lower classification. In response to his requests, management assured Nims that it was seeking funds to compensate him and that he would be made whole. There was a continuing dialogue between Nims and management's representatives regarding the out-of-class assignment and his request for appropriate compensation. During the several months that Nims continued to perform the higher classification duties required by management, he believed and relied on management's assurance that he would be made whole.

It was only in February 1985, when Nims was working in the higher classification and receiving the commensurate pay, that he learned he would not be compensated for the time earlier served in the higher classification. He then proceeded formally with his grievance, filing it on February 15, 1985.[1] The City denied the grievance at the step 4 level on the grounds that

---

[1] Pursuant to the grievance procedure, which is appendix A to the memorandum of understanding (MOU), an employee initiates a grievance by first discussing it with his immediate supervisor. If a satisfactory solution is not accomplished by informal discussion, there are four steps through which a written grievance is to be submitted. Step 1 is submission of the written grievance to the immediate supervisor within seven days; step 2 is submission to the intermediate supervisor within seven days; step 3 is submission to the appointing officer within seven days; and step 4 is submission to the employee relations director within 20 days. If the employee relations director is unable to satisfactorily resolve the grievance, the grievance is then submitted to an arbitrator. As set forth, *post,* the arbitrator in this case determined

section 40 of the MOU, regarding out-of-class work, was not binding on the department of public health and that the request for a remedy should be directed to the civil service commission.[2]

In the arbitration, the City argued that the grievance was untimely and had been abandoned, that there was no violation of the MOU and that pursuant to section F of the grievance procedure any pay award was limited to 45 days. The arbitrator found that the grievance was not untimely or abandoned due to Nims's good faith reliance on assurances that he would be compensated, stating: "Apparently there was no reason to formalize the process of demanding the compensation for performing the duties of a Psychiatric Social Worker since there was a reliance on his part that the compensation was forthcoming."

The arbitrator found a clear violation of section 40 of the MOU, based upon the testimony of witnesses at the hearing and statements of Nims's supervisors on the grievance form.[3] Pursuant to that section, an employee may be temporarily assigned to out-of-class duties without a change in classification or pay. Such a temporary assignment, however, cannot continue beyond 30 days unless it is necessary "to prevent the stoppage of essential public business" and "approval of the General Manager, Personnel, and the Mayor" is secured, none of which is alleged to have occurred in this case. Even in that situation, the appointing officer must immediately request funds for a temporary appointment at the higher classification; if such funds are not approved, the temporary assignment must be cancelled. The arbitrator held that the City's direction to Nims to continue performing the duties in the higher classification beyond 30 days was contrary to the intent of the section.

The remaining issue before the arbitrator was the appropriate remedy. The City argued that section F of the grievance procedure limited the available remedy to 45 days' backpay. That section provides: "*Timeliness of Grievance*. A grievance shall be void unless initiated by informal discussion with the immediate supervisor within forty-five (45) calendar days from the date on which the City has allegedly failed to implement a condition of

that Nims was excused from formally proceeding with his grievance until February of 1985 because he relied in good faith on management's assurances that he would be made whole.

[2] Apparently, the City subsequently abandoned these positions as there is no indication that they were urged in the arbitration and they have not been urged in the trial court or in this court.

[3] At step 2 of the grievance procedure, a supervisor stated: "I concur that Mr. Nims has been performing duties equal to those of a Psychiatric Social Worker." At step 3, the assistant deputy of acute services concurred in this assessment.

employment or within forty-five (45) calendar days from the time the grievant might reasonably have been expected to have learned of such alleged failure to implement a condition of employment. In no event shall any grievance include a claim for money relief for more than the forty-five (45) day period plus such reasonable discovery period."

The arbitrator rejected this argument, stating: "The City's position that there was a 45-day limitation from the formal filing of the grievance on February 15, 1985 cannot be supported when one considers the MOU as a whole. [¶] The City's obligation is to provide the services mandated and have adequate staffing to supply those services. The employees are *required* to perform the tasks assigned. Accordingly, they should be appropriately compensated in accordance with the rules, regulations, classifications and rates of pay established by the City for those tasks. . . . [¶] It is the considered opinion of the arbitrator that according to the MOU the grievant was entitled to the back pay award for more than the time limitation of 45 days as argued by the City's advocate." (Italics in original.)

The arbitrator then made the following award: "The grievant, Eric Nims, shall be paid the difference between the pay of Psychiatric Social Worker (Classification 2930) and Health Worker II (Classification 2586) in addition to the pay he received as Health Worker II (Classification 2586) for the period from 45 days prior to July 27, 1984 through January 29, 1985."[4]

On March 29, 1988, the City filed its petition to vacate the arbitration award and for an order that the matter be reheard. The petition alleged that the arbitrator exceeded his power in awarding 225 days' backpay and that he amended the MOU in violation of an express prohibition of the agreement. On April 4, 1988, the Union filed a cross-petition to confirm the arbitration award. Following submission of points and authorities by the parties, a hearing was scheduled for July 15, 1988. Neither party appeared at the hearing. On July 27, 1988, the trial court entered its order denying the petition to vacate the arbitration award and granting the petition to confirm the award.[5] This timely appeal followed.

---

[4] As we explain, *post,* we do not see any logic in the arbitrator's choice of 45 days prior to July 27, 1984, as the date from which the backpay award should run. As we will also explain, however, the award will be affirmed because we hold that the arbitrator had the power to run the award from 30 days after the date in March 1984 when Nims commenced performing the duties of the higher classification.

[5] The court actually signed two orders on the same day, one prepared by the Union's counsel and one prepared by the City's counsel. The orders differ in no material respect and are treated as one order for purposes of this appeal.

*The Appeal*

■ "California authorities establish that after an arbitration decision has been rendered, judicial review is available to determine whether the arbitrators have exceeded their powers. (See, e.g., *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000]; *National Indemnity Co.* v. *Superior Court* (1972) 27 Cal.App.3d 345, 349 [103 Cal.Rptr. 606]; *Firestone Tire & Rubber Co.* v. *United Rubber Workers* (1959) 168 Cal.App.2d 444, 449 [335 P.2d 990]; *Flores* v. *Barman* (1955) 130 Cal.App.2d 282, 287 [279 P.2d 81]; *Drake* v. *Stein* (1953) 116 Cal.App.2d 779, 785 [254 P.2d 613].)" (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 615, fn. 6 [116 Cal.Rptr. 507, 526 P.2d 971], parallel citations omitted.) Pursuant to Code of Civil Procedure section 1286.2, subdivision (d), the superior court must vacate the arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." An arbitrator "derives his power solely from the arbitration agreement and he cannot exceed his derived powers." (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345].) This limitation on the authority of an arbitrator to act "creates a valid field for judicial interpretation." (*Meat Cutters Local No. 439* v. *Olson Bros.* (1960) 186 Cal.App.2d 200, 204 [8 Cal.Rptr. 789].)

■ The City contends that section F of the grievance procedure precludes an arbitrator from awarding backpay for the period between the initiation of a grievance and the time of the award, and that the section limits the amount of pay which may be awarded in any grievance proceeding to a maximum of 90 days.

The argument that any grievance award is limited to a maximum of 90 days' backpay is almost incomprehensible. The City contends that under the "plain meaning" of the language of section F, the word "such" in the sentence: "In no event shall any grievance include a claim for money relief for more than the forty-five (45) day period plus *such* reasonable discovery period" (italics added) refers to a discovery period of 45 days. A reading of the first and only other sentence of section F demonstrates the absurdity of this interpretation and reveals that the word "such" refers to a period *of any length* in which an employee might reasonably have been expected to learn of the basis for a grievance: "A grievance shall be void unless initiated by informal discussion with the immediate supervisor within forty-five (45) calendar days from the date on which the City has allegedly failed to implement a condition of employment or within forty-five (45) calendar days from the time the grievant might reasonably have been expected to

have learned of such alleged failure to implement a condition of employment." In our view, the provision, like many limitations provisions, seeks to assure that the City is promptly notified of grievances but also makes allowance for the possibility that an employee (probably due to actions of the City) would be unaware, and reasonably so, of the basis for a grievance for some period of time. No reasonable interpretation of this provision can limit recovery of appropriate compensation for that discovery period to 45 days.[6]

The City also contends that section F prohibits any award of pay for the period after the filing of a grievance. This means that an employee would have to file a grievance every 45 days until a disputed matter was resolved even though the operative circumstances had not changed.[7] Like the arbitrator, we do not interpret the section in that way. At the time a grievance is initiated, it obviously cannot include a request for pay for a greater period of time than either the preceding 45 days or those 45 days combined with the period when the basis for the grievance was reasonably unknown. To require the filing of a new grievance every 45 days in order to obtain prospective compensation after a grievance has once been filed is so inimical to the efficient and orderly administration of municipal business that we cannot accept the interpretation urged by the City as reasonable. We hold that section F does not limit the power of an arbitrator to award compensation due for the period between the time of the initiation of a grievance and the time the arbitrator's award is made.

The City also contends that the Union is barred from relitigating the meaning of section F by the doctrine of collateral estoppel. It seeks to rely upon a decision involving the same Union but a different grievant in which a different superior court judge ordered a rehearing on the ground that "the arbitrator's award of 210 days backpay [sic] exceeded the express limitation provided for by the arbitration agreement . . . ." As the Union correctly points out, the City never raised the issue of collateral estoppel in the proceedings below. Although the decision was pointed out to the arbitrator and the superior court, and the City urged that a like ruling be made, no

---

[6] The City gives an example of its interpretation of section F as follows: An employee might not reasonably learn of a failure of the City forming the basis for a grievance until his retirement 10 years after the fact. He would be allowed to file a timely grievance within 45 days of such discovery but would be limited to backpay for only 90 days. The likelihood of circumstances making it reasonable for such a failure to go undetected for so long a period of time seem to us exceedingly remote. In any event, we find no support for the City's construction in the plain language of section F.

[7] In connection with its 90-day limitation argument, the City argues that the grievant could file a new grievance every 90 days. Even under the City's interpretation, a new grievance would have to be filed every 45 days, for once a grievance is known there is no longer any issue of a "discovery period."

contention was made that the Union was collaterally estopped by the decision. ■ The general rule is that appellate courts will not consider new issues and theories raised for the first time on appeal. (*Parker* v. *City of Fountain Valley* (1981) 127 Cal.App.3d 99, 117 [179 Cal.Rptr. 351]; *United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 175 [154 Cal.Rptr. 263].) We decline to consider this contention.

Finally, we address the amount of the compensation awarded to Nims. Under the facts found by the arbitrator, there are two theories under which Nims would be entitled to an award of backpay dating from thirty days following his assignment to out-of-class work in March 1984.[8] It can be assumed Nims's grievance was initiated by his oral discussions with management in March 1984 but he was excused from formally proceeding until February 1985 because he had been told the matter would be resolved in his favor. It can also be assumed that Nims could not reasonably have been expected to learn of the City's failure to implement a condition of employment until February 1985 when he was told, contrary to all previous assurances, that he would not be compensated for the out-of-class work performed in 1984. We discern no theory, however, under which 45 days prior to July 27, 1984, is the appropriate date from which to run the backpay award. The arbitrator was impressed with the specific nature of Nims's memorandum to his supervisor on July 27, 1984, and stated: "It was at this point that the City cannot deny the grievant his claim for relief. He put them on notice and asked to be relieved of the duties of a Psychiatric Social Worker. The claim was not denied by management." Apparently combining this thought with the reference to 45 days in section F, the arbitrator chose the illogical date of 45 days prior to July 27, 1984. We have determined that under the facts found by the arbitrator he could have awarded backpay from an even earlier date. It is obvious that he sought to award the maximum benefit available. Consequently, we will affirm the order confirming the award.

The Union requests that we impose sanctions against the City for the taking of a frivolous appeal. Although we have determined that the appeal is not meritorious, we do not conclude that it was frivolous. We therefore deny this request.

---

[8] Since the MOU permits out-of-class duties to be imposed for 30 days without a change in compensation, pay at the higher classification for the first 30 days of Nims's out-of-class work is not available.

*Disposition*

The order confirming the arbitration award and denying the cross-petition to vacate the award is affirmed.

Benson, J., and Peterson, J., concurred.