[No. B057322. Second Dist., Div. Five. Mar. 17, 1992.]

CITIBANK, N.A., Plaintiff and Appellant, v.
CROWELL, WEEDON & CO. et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

## COUNSEL

Keesal, Young & Logan, Neal S. Robb, Michael A. Thurman and Dawn M. Schock for Plaintiff and Appellant.

White & Case, John A. Sturgeon, David J. Wilson, Kendig & Ross, Dennis A. Kendig and Bradley D. Ross for Defendants and Respondents.

## OPINION

ASHBY, J.—Appellant Citibank, N.A. (Citibank), petitioned the superior court to vacate or correct an arbitration award in favor of respondents Crowell, Weedon & Co. (Crowell), Clifford Drake & Co., Inc. (Drake) and others. (Code Civ. Proc., §§ 1285, 1286.2.) The court denied the petition and entered judgment confirming the award. (Code Civ. Proc., §§ 1286, 1287.4.) Citibank appeals. (Code Civ. Proc., § 1294, subd. (d).)

The underlying dispute is among various municipal securities broker/dealers concerning their relative liabilities, under the rules of their organization, the Municipal Securities Rulemaking Board (MSRB), for the sale of bonds which had been stolen.

The rules of the municipal securities industry provide for the "reclamation" of bonds which have previously been accepted for delivery, if some defect in the original delivery is subsequently discovered. A subsequent discovery that delivered bonds were stolen allows for such reclamation by the purchasing party back to the selling party. The reclamation procedure allows the purchasing party to return the bonds to the last seller, which may then reclaim the bonds back to the party which sold to that seller, and so on up the chain.[1]

A thief stole 225 Los Angeles Airport improvement coupon bearer bonds. Appellant Citibank, without knowledge the bonds were stolen, purchased

---

[1]Rule G-12 of the MSRB provides in pertinent part: "(g) Rejections and Reclamations . . . [¶] (B) 'Reclamation' shall mean return by the receiving party of securities previously

them. On January 6, 1983, Citibank sold them to R. L. Crary & Co., Inc. (Crary), who sold them on the same day to Helm, Nabori & Perry (Helm),[2] who sold them the same day to respondent Crowell, who then sold them to other broker/dealers or customers.

In March 1983 the 225 bonds were reported stolen. In the fall of 1983, 55 of the bonds were reclaimed to Crowell, which were then reclaimed to Helm and Crary and Citibank pursuant to the reclamation procedure.

In September 1988 another 15 stolen bonds were reclaimed to Crowell by one of its broker/dealer customers. When Crowell attempted to reclaim the 15 bonds to Drake, as Helm's successor, Drake refused, on February 6, 1989. Pursuant to the MSRB's Arbitration Code (rule G-35) which required member dealers to arbitrate their disputes, Crowell filed a statement of claim against Drake on March 31, 1989. Crowell's statement of claim involved the 15 bonds recently reclaimed to Crowell and a request to establish a contingent liability to cover the 155 remaining bonds still outstanding. Drake filed a statement of answer denying liability and filed third party claims against Crary and Citibank, alleging that if Crowell was entitled to reclaim the bonds to Drake, then Drake was entitled to reclaim them to Crary and (on information that Crary was no longer in business) to Citibank. Citibank filed its statement of answer. The parties submitted to arbitration before a three-person arbitration board of the MSRB. By the time of the arbitration hearing an additional 15 bonds had been reclaimed to Crowell. The arbitrators permitted Crowell to amend its claim to include these 15 bonds, making a total of 30.

The arbitrators ruled: (1) Both Citibank and Crowell have been negligent in the chain of events leading to this dispute, (2) to simplify the formal reclamation process Crowell shall deliver directly to Citibank the 30 bonds for the amount of $32,374.39, (3) Crowell will bear sole responsibility for interest payments from 1983 on the 30 bonds reclaimed by other dealers to Crowell, (4) future reclamations of the remaining 140 bonds will be reclaimed directly to Citibank by Crowell in an amount equal to that paid by Crowell to reclaiming dealers in the future and (5) future liability on those 140 bonds for interest payments between 1983 and the date the bonds are

accepted for delivery. . . . [¶] . . . . A reclamation may be made by the receiving party . . . if, subsequent to delivery, information is discovered which, if known at the time of the delivery, would have caused the delivery not to constitute good delivery, provided such reclamation or demand for reclamation is made within the following time limits. . . . [¶] (D) Reclamation or demand for reclamation by reason of the following may be made *without any time limitation*: [¶] (1) the security delivered is reported missing, stolen, fraudulent or counterfeit." (Italics added.)

[2] At the time of the arbitration respondent Drake was the successor in interest to Helm.

reclaimed to Crowell by other dealers will be a liability shared equally by Crowell and Citibank.

Citibank contends the award exceeded the powers of the arbitrators. Finding no merit to these contentions we affirm.

I

DISCUSSION

The grounds upon which a court may vacate an arbitration award are extremely limited. (Code Civ. Proc., § 1286.2.) "The merits of a controversy in arbitration are not open for judicial review. The findings of an arbitrator on questions of law as well as questions of fact are final and conclusive. It is not appropriate for courts to review the sufficiency of the evidence to support the arbitrator's award or to pass upon the validity of the arbitrator's reasoning. . . . [¶] . . . . An award will not be set aside merely because the arbitrator erred in finding the facts or applying the law." (*City of Oakland* v. *United Public Employees* (1986) 179 Cal.App.3d 356, 363-364 [224 Cal.Rptr. 523].)

However, a court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers." (Code Civ. Proc., § 1286.2, subd. (d).) Since the arbitrators derive their power solely from the arbitration agreement or the parties' stipulation submitting to arbitration, it is the court's province to interpret the parties' agreement in order to determine whether the arbitrators exceeded their powers by deciding a dispute which was not arbitrable. (*Pacific Crown Distributors* v. *Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1143 [228 Cal.Rptr. 645]; *Department of Public Health* v. *Service Employees Internat. Union* (1989) 215 Cal.App.3d 429, 434 [263 Cal.Rptr. 711]; see *AT&T Technologies* v. *Communications Workers* (1986) 475 U.S. 643, 648-651 [89 L.Ed.2d 648, 655-657, 106 S.Ct. 1415 ].)[3]

Appellant Citibank contends there were three respects in which the arbitrators exceeded their powers in this case.

[3]The federal Arbitration Act (9 U.S.C.A. § 1 et seq.) preempts state laws which interfere with the enforcement of arbitration agreements involving interstate commerce. (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 13-16 [79 L.Ed.2d 1, 13-16, 104 S.Ct. 852]; *Perry* v. *Thomas* (1987) 482 U.S. 483, 489 [96 L.Ed.2d 426, 435, 107 S.Ct. 2520].) The federal act is similar, however, to Code of Civil Procedure section 1286.2, subdivision (d) in providing for the vacating of an arbitration award if "the arbitrators exceeded their powers." (9 U.S.C.A. § 10(a)(4).) For the purpose of this case we observe no conflict and we cite state or federal authority where persuasive.

## II

### Eligibility for Arbitration Within Six-year Time Limit

MSRB's Arbitration Code, rule G-35, section 6 provides: "(a) No claim, dispute or controversy shall be eligible for submission to arbitration under this Arbitration Code in any instance where six years shall have elapsed from the occurrence of the act or event giving rise to the claim, dispute or controversy."

Identical provisions in the arbitration codes of the National Association of Securities Dealers and New York Stock Exchange have been found to be "an eligibility requirement rather than a statute of limitations. . . . [It] therefore serves as an absolute bar to claims submitted for arbitration more than six years after the event which gave rise to the dispute"; such claims are not subject to arbitration. (*PaineWebber, Inc.* v. *Farnam* (7th Cir. 1989) 870 F.2d 1286, 1292; *PaineWebber, Inc.* v. *Hartmann* (3d Cir. 1990) 921 F.2d 507, 512-514.)

Citibank contends "the occurrence of the act or event giving rise to the claim, dispute or controversy" is the sale of the stolen bonds by Crowell on January 6, 1983, and therefore Crowell's arbitration claim filed March 31, 1989 was beyond the six-year limit and not eligible for arbitration. Citibank raised this objection in its statement of answer in the arbitration.

Crowell contends the claim was timely because the act or event giving rise to the claim, dispute or controversy did not occur until February 6, 1989, when Drake refused Crowell's demand for reclamation, submitted to Drake pursuant to rule G-12 (g)(iii)(D) which entitled Crowell to reclaim a stolen security without any time limitation.

The act giving rise to the claim or controversy depends on the circumstances of the case. Citibank cites cases where a customer filed a claim against a broker/dealer for fraud, misrepresentation, negligence or breach of fiduciary duty in handling the customer's account, and the relevant date was held to be the purchase date. (*Castellano* v. *Prudential-Bache Securities, Inc.*, No. 90 Civ. 1287 (S.D.N.Y. June 19, 1990) [1990-1991 Transfer Binder] Fed. Sec.L.Rep. (CCH) [¶] 95,321; *Colman* v. *Shearson Lehman Hutton, Inc.*, National Association of Securities Dealers, Final Order No. 90-01666 (May 1991.) The controversy here is different. The dispute is entirely between member broker/dealers who according to the rules of their own organization have a right to reclaim stolen securities "without any time limitation." According to Crowell's brief, "Often the only way a bond holder learns that

a bearer bond is stolen is when he or she attempts to collect an interest payment. The reclamation process set up by the MSRB protects the innocent purchaser of the bearer bond by allowing recision of the bond purchase. The strength of this remedy is that it can be exercised without time limitation. [Citibank's argument] would destroy the MSRB's policy of protecting the innocent."

The event giving rise to the dispute occurred on February 6, 1989, when Drake, as Helm's successor, refused reclamation of the bonds. Crowell's claim for arbitration was not beyond the six-year eligibility requirement.

## III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

The judgment confirming the arbitration award is affirmed.

Turner, P. J., and Boren, J., concurred.

---

*See footnote, *ante*, page 844.